IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SENO MEDICAL INSTRUMENTS, INC., | § § § § | |
| Plaintiff, | § § | CIVIL NO. SA-18-CV-0190-FB |
| vs. | § § | |
| BIOMEDICAL SYSTEMS CORPORATION, | § § § § | |
| Defendant. | § § § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Plaintiff's Motion to Dismiss Defendant's Counterclaim for Consequential Damages [#22]. Also before the Court are Defendant's Response [#25] and Plaintiff's Reply [#26]. On March 1, 2018, the Honorable Fred Biery referred all pre-trial proceedings in this case to the undersigned for disposition pursuant to Federal Rule of Civil Procedure 72 and Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that the Court grant Plaintiff's Motion to Dismiss Defendant's Counterclaim for Consequential Damages.

## I. Factual and Procedural Background

This is a breach of contract case involving a contract for diagnostic and data analysis services in support of clinical studies for a new breast cancer detection device. Plaintiff Seno Medical Instruments, Inc., ("Seno Medical") is a San Antonio-based medical imaging company

1

with a focus on breast cancer diagnosis. (Am. Compl. [#11] at ¶ 5.) Seno Medical's first clinical application is for a laser opto-acoustic imaging system capable of producing three-dimensional images that allow more precise and earlier detection of smaller tumors, and the ability to differentiate benign from malignant growth without biopsy. (*Id.* at ¶¶ 6–9.) The company is seeking approval from the Food and Drug Administration ("FDA") to sell the device. (*Id.* at ¶ 10.) As part of the approval process, Seno Medical designed and implemented a study to evaluate the sensitivity and specificity of the device for visualizing suspicious masses as compared to traditional breast cancer detection methods. (*Id.* at ¶¶ 14–15.) The study involved approximately 2,000 female subjects whose breast lesions were scanned by sonographers and then electronically transmitted to independent radiologists for remote interpretation. (*Id.* at ¶ 16.)

In 2012, Seno Medical entered into a Master Service Agreement ("MSA") with Defendant Biomedical Systems Corporation ("Biomedical") under which Biomedical would provide select diagnostic and data analysis services in connection with Seno Medical's study. (*Id.* at ¶ 20.) Specifically, Biomedical was responsible for transmitting the images captured by Seno Medical's opto-acoustic imaging system to the independent radiologists for analysis. (*Id.* at ¶ 21.) In 2013, the radiologists hired by Seno Medical reported encountering significant difficulties reading the images that were transmitted to them by Biomedical. (*Id.* at ¶ 23.) Seno Medical alleges that the problems were caused by the failure of Biomedical's software to accommodate the sizes of the images, which prevented the radiologists from being able to see the entire image. (*Id.*) In response to the alleged failure of its software to perform as promised, Biomedical hired Radiant Sage Ventures, LLC, ("Radiant") to provide replacement software to complete the study. (*Id.* at ¶ 24.) In 2015, as part of a routine software update, Radiant allegedly deleted a part of the formula used to accurately perform nomogram calculations, which resulted

in incorrect information being supplied to the radiologists who were interpreting the images. (*Id.* at ¶ 25.) Seno Medical claims that 1,369 subjects were affected. (*Id.* at ¶ 39.)

Seno Medical alleges that Biomedical breached the MSA by, among other things, supplying software that failed to perform as promised and negligently supervising Radiant, and seeks damages in excess of $2.5 million for its actual and consequential damages arising from the alleged breach. (*Id.* at ¶¶ 51, 55.)

On January 23, 2018, Seno Medical filed a complaint against Biomedical in the 224th Judicial District Court of Bexar County, Texas, asserting a cause of action for breach of contract. Biomedical timely filed its Notice of Removal [#1] in this Court on February 26, 2018. Seno Medical filed an amended complaint [#11] against Biomedical on May 31, 2018. On June 4, 2018, Biomedical filed a counterclaim [#20] against Seno Medical, alleging breach of contract for failing to pay for services it provided in connection with Seno Medical's study (*i.e.*, collecting sonographers' scans and transmitting them to independent radiologists for review). (Countercl. [#20] at ¶ 4.12.) Biomedical claims that Seno Medical still owes it over $450,000 for these services. (*Id.* at ¶ 4.8.) In addition to payment under the contract, Biomedical seeks consequential damages flowing from Seno Medical's alleged breach of contract. (*Id.* at ¶ 4.14.) Seno Medical now moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the portion of Biomedical's Counterclaim seeking consequential damages, claiming that the terms of the contract bar Biomedical from seeking consequential damages in connection with Seno Medical's alleged breach. (Pl.'s Mot. [#22] at 1–2.)

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To

satisfy the Rule 8 pleading standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint does not need to contain "detailed factual allegations" to survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

A court considering a motion to dismiss must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). While a court must accept all of the claimant's well-pleaded facts as true, it is not bound to accept as true conclusory allegations or allegations that merely restate the legal elements of a claim. *See Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should only be dismissed if a court determines that it is beyond doubt that the claimant cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

In ruling on a motion to dismiss, the Court may consider documents that are attached to the movant's motion if the documents were referred to or incorporated by reference in the pleading of the claim that the movant is seeking to dismiss. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's

complaint and are central to her claim.") In this case, that includes the MSA, which Biomedical refers to in its Counterclaim and Seno Medical attaches to its Motion to Dismiss.

Under Rule 12(b)(6), a court may dismiss part of a complaint (e.g., a claim for a particular category of damages), rather than the complaint in its entirety. *See*, *e.g.*, *Collins v. Easynews, Inc.*, No. A-06-CA-451 LY, 2008 WL 11406004, at *3 (W.D. Tex. Feb. 20, 2008) (dismissing part of the plaintiff's complaint for failure to state a claim); *Rascon v. Austin I.S.D.*, No. A-05-CA-1072 LY, 2006 WL 2045733, at *3 (W.D. Tex. July 18, 2006), *report and recommendation adopted*, No. A-05-CA-1072-LY, 2006 WL 8432651 (W.D. Tex. Sept. 5, 2006) (same).

### III. Allegations in the Counterclaim

The following allegations are contained in Biomedical's Counterclaim against Seno Medical and are accepted as true for purposes of ruling on Seno Medical's Motion to Dismiss. Biomedical is a global data and technology company specializing in clinical trials services and medical devices to biopharmaceutical and healthcare organizations. (Countercl. at ¶ 4.1.) In 2012, Biomedical and Seno Medical entered into a contract in which Biomedical agreed to provide select diagnostic and data analysis services in support of a study by Seno Medical into the effectiveness of its experimental opto-acoustic breast cancer diagnostic device. (*Id.* at ¶ 4.3.) Article 16.1 of the MSA states that:

> [SENO MEDICAL] shall compensate BIOMEDICAL for BIOMEDICAL's services in accordance with the terms set forth below, and pursuant to the pricing outlined in the applicable Task Order.
>
> BIOMEDICAL shall prepare and submit to [SENO MEDICAL] invoices for payment as follows:
>
> BIOMEDICAL shall charge fees for Services in the amounts previously agreed to by the parties in the final study budget of the applicable Task Order ("Study Budget"). For the services, [SENO MEDICAL] agrees to pay any undisputed

5

amounts specified in an invoice within thirty (30) days after [SENO MEDICAL's] receipt of such invoice.

In 2018, Seno Medical advised Biomedical that it would unilaterally reduce payments on Biomedical's invoices to offset the costs of addressing certain problems with the study, problems which allegedly were caused by Biomedical's negligent performance under the contract. (*Id.* at ¶ 4.5.)

Biomedical alleges that this constitutes a breach of the MSA. (*Id.* at ¶ 4.12.) Biomedical claims that no provision of the contract authorizes Seno Medical to unilaterally withhold or reduce payments on invoiced balances in response to complications with the study, regardless of the nature, cause, or cost of the problems cited by Seno Medical. (*Id.* at ¶ 4.6.) Biomedical insists that it has performed all of its obligations under the contract (*i.e.*, collecting sonographers' scans and transmitting them to independent radiologists for review). (*Id.* at ¶ 4.7.) Biomedical maintains that Seno Medical's sole reason for its failure to pay the invoiced balances is its complaint of alleged defects in Biomedical's performance under the contract. (*Id.*) Biomedical contends that, under the terms of the contract, dissatisfaction with Biomedical's performance does not excuse Seno Medical's duty to pay Biomedical for services rendered, pending resolution of this dispute. (*Id.* at ¶ 4.6.) According to the Counterclaim, Seno Medical still owes Biomedical $454,876.47 for services rendered under the contract. (*Id.* at ¶ 4.8.) In addition to payment under the contract, Biomedical seeks compensatory and consequential damages flowing from Seno Medical's alleged breach of contract. (*Id.* at ¶ 4.14.)

## IV. Analysis

This Report and Recommendation addresses only one, narrow issue: Seno Medical is not contesting that Biomedical adequately pleaded a cause of action for breach of contract, only Biomedical's pleading that it is entitled to consequential damages. Because the MSA includes a

consequential damages waiver and the indemnity provision does not apply here, the Court should dismiss Biomedical's counterclaim for consequential damages.

## A.     The MSA explicitly bars claims for consequential damages.

Biomedical's counterclaim for consequential damages should be dismissed because such damages are barred by the plain terms of the MSA.  Under Texas law, "[i]n the event of a breach a party to a contract can pursue any remedy which the law affords in addition to the remedy provided in the contract, unless the contract declares the remedy to be exclusive."  *Tabor v. Ragle*, 526 S.W.2d 670, 676 (Tex. App.—Fort Worth 1975, writ ref'd n.r.e.).  "[L]anguage such as 'exclusive' or 'sole' remedy are an indication of an exclusive remedy."  *McCarty v. Montgomery*, 290 S.W.3d 525, 534 (Tex. App.—Eastland 2009, pet. denied).

Article 19.1 of the MSA sets forth a limitation on the remedies available to the parties.  It states, in pertinent part, that:

> Except as set forth in this Section 19 (iii) [sic], neither BIOMEDICAL or [sic] [SENO MEDICAL] shall be liable to each other for any lost profits, any loss of business, any cost of replacement services, or any indirect, consequential, incidental or special losses or damages of any kind or nature whatsoever, howsoever caused (hereinafter, the "Damage Type Limitation"); and,

> Except as set forth below in this Section 19 (iii) [sic], the sole and exclusive remedy of each party for any claim, loss or damages by one party against the other in any way related to, or arising out of, this Agreement or any services provided or anticipated to be provided shall be limited to such party's actual, direct damages . . . .

Thus, Article 19.1 unambiguously precludes the recovery of consequential damages.  It provides that neither party shall be liable to the other "for any . . . consequential . . . losses or damages of any kind or nature whatsoever, howsoever caused" and that "the sole and exclusive remedy" for any alleged breach of contract is the non-breaching party's "actual, direct damages."  Article 19.1 indicates that the parties intended actual damages to be their only remedy in an action to

7

recover for breach of contract. Neither party can be held liable to the other for the consequential damages arising from their allegedly breaching conduct. The parties should be held to the terms of their agreement. Thus, the parties waived their right to recover for consequential damages, and the Court is bound to enforce this consequential damages waiver.

**B.     Because the indemnity agreement covers only negligent conduct, it does not apply to Seno Medical's deliberate non-payment of invoiced balances.**

Biomedical argues that Seno Medical's non-payment of invoiced balances is a violation of the company's indemnification obligations under Article 11.1 of the MSA, which allows for the recovery of consequential damages. "An indemnity agreement is a promise by the indemnitor to safeguard or hold the indemnitee harmless against existing or future loss or liability, or both." *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 63 (Tex. App.—San Antonio 2005, pet. denied). Indemnity agreements are construed under the normal rules of contract construction. *See Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex. 1998).

"In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). To achieve the objective of ascertaining the true intentions of the parties as expressed in the instrument, "courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* Put another way, courts "presume that the parties to a contract intend every clause to have some effect." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Dorsett*, 164 S.W.3d at 662.

8

Indemnity agreements are strictly construed in favor of the indemnitor and against the indemnitee. *See Safeco Ins. Co. of Am. v. Gaubert*, 829 S.W.2d 274, 281 (Tex. App.—Dallas 1992, writ denied); *see also Smith v. Scott*, 261 S.W. 1089, 1089 (Tex. Civ. App.—Amarillo 1924, no writ) ("The cardinal rule governing in the construction of indemnity contracts is that the indemnitor is entitled to have his undertaking strictly construed in his favor, and that it cannot be extended by construction or implication beyond its plain terms."). This rule prohibits a court from extending, by construction or implication, an indemnity agreement beyond its plain terms. *See Hudson v. Hinton*, 435 S.W.2d 211, 214 (Tex. Civ. App.—Dallas 1968, no writ). However, this rule is not a rule of construction; rather, "it is a rule of substantive law applicable only after the parties' intent has been ascertained through ordinary rules of construction." *Aerospatiale Helicopter Corp. v. Universal Health Servs., Inc.*, 778 S.W.2d 492, 502 (Tex. App.—Dallas 1989, writ denied).

In determining the scope of an indemnity agreement, therefore, the Court must first apply the normal rules of contract construction to ascertain the true intentions of the parties. In determining the true intentions of the parties as expressed in the instrument, neither party is favored over the other simply because their agreement is one of indemnity. However, after the parties' intent has been determined, the Court will not extend the liability of the indemnitor under its contract as thus interpreted beyond the plain terms of the contract.

    1.    <u>The Master Service Agreement includes an exception to the consequential damages waiver for breaches of a party's indemnification obligations.</u>

While the first two paragraphs of Article 19.1 would appear to preclude the recovery of consequential damages in all cases, the third paragraph includes an exception for situations in which a party's indemnification obligations apply. Article 19.1 states, in pertinent part, that "[t]he Damage Type Limitation shall not apply to or limit either party's indemnification

obligations hereunder." Seno Medical's indemnification obligations are listed in Article 11.1, which states that:

> [SENO MEDICAL] agrees to indemnify, defend and hold harmless BIOMEDICAL against and in respect of any and all losses, costs, expenses, liabilities and damages, including without limitation, interest, penalties and reasonable attorney's fees resulting from [SENO MEDICAL's] negligent performance of the obligations required herein including any negligent failure on the part of [SENO MEDICAL] to honor [SENO MEDICAL's] financial obligations to any institution or investigator participating in the study or [SENO MEDICAL's] subcontractors. For the purposes of this indemnification, no inference of negligence shall be made based solely upon the allegations of the claimant. [SENO MEDICAL] shall not be deemed negligent based solely upon its compliance with the protocol or instructions of the [sic] BIOMEDICAL.

Biomedical claims that this provision of the MSA applies to Seno Medical's non-payment of invoiced balances. While the indemnity provision would appear to be triggered only by Seno Medical's *negligent* conduct, Biomedical insists that it applies to Seno Medical's *deliberate* or *intentional* non-payment of invoiced balances because "intentional conduct contemplates a more culpable mental state than negligent conduct." (Def.'s Resp. [#25] at 3.) The crux of Biomedical's argument is that the indemnification agreement applies here because Seno Medical has been worse than negligent in breaching the MSA. To put it another way, if the indemnification provision applies to negligent breaches of the contract, then it follows, *a fortiori*, that it applies to intentional breaches of the contract. The undersigned disagrees.

    2.    <u>The indemnity provision is triggered only by a party's "negligent performance," and does not apply to intentional conduct.</u>

The Court should reject Biomedical's argument that the indemnity provision applies to Seno Medical's non-payment of invoiced balances. The gravamen of the Counterclaim is that Seno Medical breached Article 16.1 of the MSA by unilaterally withholding payments on invoiced balances. Biomedical urges the Court to hold that Seno Medical's failure "to pay any undisputed amounts specified in an invoice within thirty (30) days after [SENO MEDICAL's]

receipt of such invoice" constitutes a breach of the contract. (Countercl. at ¶ 4.4.) In response to Seno Medical's Motion to Dismiss, Biomedical argues, for the first time, that Seno Medical's non-payment of invoiced balances violated Seno Medical's indemnification obligations under Article 11.1 of the MSA. The Court is unconvinced by Biomedical's attempt to portray a non-payment issue as an indemnification issue.

The indemnity agreement, by its clear terms, applies only to negligent conduct, and does not apply to intentional violations of a party's contractual obligations. Article 11.1 states that "[SENO MEDICAL] agrees to indemnify . . . Biomedical against . . . all losses . . . resulting from [SENO MEDICAL's] *negligent* performance of the obligations required herein including any *negligent* failure on the part of [SENO MEDICAL] to honor [SENO MEDICAL's] financial obligations . . . ." As explained above, the Texas Supreme Court has held that the language used in a contract must be given its ordinary meaning. *See NationsBank*, 939 S.W.2d at 131. Thus, the Court must give the term "negligent performance" in the indemnity agreement its ordinary and plain definition. A plain and ordinary reading of the words used in the indemnity agreement indicates that a party is bound to indemnify the other against damages only if the party caused the damages by acting negligently. This is the plain and ordinary reading of the phrase "negligent performance." And, as explained above, the Texas Supreme Court has repeatedly warned against extending the construction of an indemnity provision beyond its plain terms. *See Gaubert*, 829 S.W.2d at 281. The phrase "negligent performance" in Article 11.1 of the MSA cannot be interpreted to allow the equation of intentional with negligent conduct.

In addition, such an interpretation would violate the cardinal rule of contract interpretation that, to the extent possible, a court should harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *See NationsBank*, 939

S.W.2d at 121 (Tex. 1996). Yet Biomedical's interpretation of Article 11.1 would render Article 19.1's consequential damages waiver meaningless. If the Court were to equate negligent and intentional conduct for purposes of the indemnity agreement, almost every breach of the MSA would be actionable under Article 11, which carries much broader remedies than Article 19.1. Such an interpretation would render the consequential damages waiver a nullity. Thus, the Court should reject Biomedical's attempt to conflate intentional with negligent conduct for purposes of the indemnity agreement.

Biomedical urges that the indemnity agreement nevertheless applies to Seno Medical's actions because "*intentional* conduct contemplates *a more culpable* mental state than *negligent* conduct." (Def.'s Resp. at 3.) While that may be true in the context of the criminal law, *see* Model Penal Code § 2.02(5), Biomedical provides no support for the proposition that a provision in a contract imposing liability for a party's negligent conduct necessarily imposes liability for that party's intentional conduct as well.

## V. Conclusion and Recommendation

For the reasons set forth above, the undersigned recommends that Plaintiff's Motion to Dismiss Defendant's Counterclaim for Consequential Damages [#22] be **GRANTED.**

## VI. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file

the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 6th day of November, 2018.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE